IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MARCHELLE D. BOUYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-028 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  **BACKGROUND**

Based on claims of disability dating back to October 1, 2005, Plaintiff applied for SSI benefits with a protective filing date of December 20, 2005. Tr. ("R"), pp. 55-59. The Social Security Administration denied Plaintiff's application and her request for reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 21-26,

30-33, 165-83, 234). Plaintiff, who was represented by counsel, appeared and testified on her own behalf at a hearing conducted on October 12, 2007. R. 281-309. On January 18, 2008, the ALJ issued an unfavorable decision. R. 11-19.

Applying the sequential process required by 20 CFR § 416.920, the ALJ found:

1. At all times relevant to this decision, the claimant has not engaged in substantial gainful activity.

2. The claimant has had the following severe impairments: depressive disorder, alcohol dependency, cannabis dependency, lumbar spondylopathy – degenerative joint disease at L5-S1, and mild mental deficiency, 20 CFR § 416.920(c).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light exertional simple, but not detailed, work-related tasks. 20 CFR § 416.967(b).[1] The claimant has no past relevant work.

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 416.960(c), and 416.966). The claimant has not been under a disability, as defined in the Social Security Act, since

---

[1] Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 416.967(b).

December 20, 2005. (20 CFR § 416.920(g)).

R. 13-20.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case after its review of the new evidence, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting that the case be remanded to the Commissioner for further consideration. Plaintiff argues that the AC improperly reviewed and did not adequately explain its reasons for rejecting the newly prepared "physical capacities evaluation" by Dr. S.C. D'Souza,[2] and the ALJ erred in finding Plaintiff did not meet Listing 12.05C. See generally Pl.'s Br. (doc. no. 14).

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference,

---

[2]After the ALJ issued his decision in January 2008, Dr. D'Souza prepared a "physical capacities evaluation" in April 2008 that was then submitted by Plaintiff to the AC.

3

the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

As noted above, Plaintiff argues that: (1) the AC failed to articulate an explicit and adequate reason amounting to good cause for rejecting Dr. D'Souza's opinion, (2) the AC failed to weigh Dr. D'Souza's opinion using the six-factor analysis of 20 CFR § 416.927(d) (2009), (3) the AC erred in failing to re-contact Dr. D'Souza, and (4) the ALJ erred in finding that Plaintiff did not meet Listing 12.05C. See generally Pl.'s Br. The Commissioner maintains that Plaintiff's arguments regarding the AC's consideration of Dr. D'Souza's opinion miss the mark because they rest on a fundamental misunderstanding of the nature of the AC's denial of review, and vastly overstate the evidentiary value of Dr. D'Souza's undetailed, facially inconsistent "physical capacities evaluation. See generally Comm'r Br. (doc. no. 15). Additionally, Defendant argues that Plaintiff's Listing argument also falls short, because the argument disregards governing circuit court precedent delineating the ALJ's role in assessing the validity of I.Q. scores, and because it only perfunctorily addresses other requirements of listing 12.05C that Plaintiff plainly failed to meet. (Id.). Defendant has the better argument.

### A. AC's Alleged Failures

The ALJ determined that Plaintiff has the residual functional capacity to perform light exertional, simple, but not detailed, work-related tasks. R. 16. The ALJ found that Plaintiff is able to interact adequately with the public and co-workers in a casual setting. R. 16. She can accept supervision if non-threatening and infrequently has some difficulty in adapting to workplace changes. R. 16.

In concluding that Plaintiff could perform light, simple, but not detailed, work-related

tasks, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. R. 17. However, the ALJ then noted that Plaintiff's statements concerning the intensity, persistence and the limiting effects were not entirely credible. R. 17. The ALJ acknowledged that Plaintiff has back and hip pain, but noted that her hand x-ray was negative, and that her hip x-rays showed only mild osteoarthritis. R. 17, 267, 269. The ALJ also noted that Plaintiff provided that she walks to and from the grocery store which is two blocks away, and to and from church which is three blocks away. R. 17. Additionally, the ALJ relied on Plaintiff's reported continued performance of activities of daily living.[3] R. 17, 300-04. The ALJ further relied on Vasudev Kulkarni, M.D.'s evaluation of Plaintiff. R. 17, 155-64. Dr. Kulkarni opined there was no etiology for Plaintiff's musculoskeletal complaints. (Id.). Thus, the ALJ concluded that Plaintiff is not disabled. R. 19.

Three months after the ALJ had issued his opinion, Plaintiff submitted Dr. D'Souza's opinion/report to the AC because he found that Plaintiff was disabled. Pl.'s Br., pp. 15, 16-19. More specifically, Dr. D'Souza's opinion/report indicates that Plaintiff was limited in her ability to perform work and that she had been disabled for the past three to five years. R. 276-80. Dr. D'Souza's report provides that Plaintiff could stand for 30 minutes per day; she could sit one hour per day; she should not engage in any daily lifting; she had limited abilities to reach, handle and perform fine manipulation; she could walk about 500 feet per day; however, she did not need to rest, recline or lie down several times a day; her

---

[3]Plaintiff described her activities of daily living to include cooking, cleaning, shopping, running errands, doing television exercise, going for rides, and attending church. R. 17, 300-04.

medications caused drowsiness and would interfere with her ability to work; and her impairment of severe lumbar spondylopathy could reasonably be expected to cause the pain she alleged. R. 276-80.

Concerning the newly submitted evidence to the AC, Plaintiff argues that although the AC stated that it had reviewed Dr. D'Souza's report, the AC failed to make a specific and well articulated reason, amounting to good cause, for rejecting Dr. D'Souza's opinion. (Id. at 18). Furthermore, the AC failed to weigh Dr. D'Souza's opinion using the six-factor analysis of 20 CFR § 416.927(d) on how to weigh medical opinions. Plaintiff claims that because of these alleged errors by the AC, her case should be remanded.

The Commissioner counters that the AC was not required to explain its assessment of Dr. D'Souza's report in its notice denying the request for review because the denial of review is not a "decision" requiring explanation. Comm'r Br., p. 15. More specifically, the Commissioner provides that where, as here, Plaintiff submits additional evidence to the AC with the request for review, the AC considers the evidence only if it is new, material, and it relates to the period on or before the date of the ALJ hearing decision. (Id. (citing 20 CFR § 404.970(b)). To the extent Plaintiff argues that the AC was required to evaluate Dr. D'Souza's report pursuant to the factors enumerated for weighing a medical opinion, the Commissioner disagrees. The Commissioner asserts that the AC was not required to address the report in its denial of review, because it was not making a decision or determination. (Id. (citing 20 CFR § 404.901, 416.927, Social Security Ruling (SSR) 96-2p)). Indeed, the Commissioner acknowledges that the regulations governing the AC review plainly distinguish between cases where the AC denies the request for review and those where it

7

grants review and issues a decision. (Id. at 16 (citing 20 CFR §§ 404.967, 404.981)). Furthermore, the regulations provide that the AC "will follow the same rules for considering opinion evidence as [ALJs] follow [only] [w]hen the [AC] makes a decision." (Id. (citing 20 CFR § 416.927(f)(3)).

Previously, when presented with new evidence that was submitted to the AC, a reviewing court could only consider whether the new evidence necessitated remand under sentence six of § 405(g); it could not consider the new evidence in determining whether the Commissioner's final decision was supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998); Keeton v. Department of Health and Human Servs., 21 F.3d 1064, 1068 (11th Cir. 1994). Under that standard, a reviewing court could remand a case for consideration of new evidence only if the evidence was material and only if good cause existed for the claimant's failure to submit the evidence at the prior administrative proceeding. 42 U.S.C. § 405(g).

However, the Eleventh Circuit has attempted to clarify the analysis of Social Security cases where the plaintiff requests review of the ALJ's decision based on new evidence submitted to the AC, and the AC denies that request after reviewing the evidence. In Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253 (11th Cir. 2007), the Eleventh Circuit concluded that a sentence six remand is only proper "when new material evidence that was not incorporated into the administrative record for good cause" and "not presented to the Commissioner at any stage of the administrative process" is submitted to the district court. Id. at 1267 (citations omitted). The court went on to find that "evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the

8

administrative record." Id. at 1269. Thus, such evidence "can be the basis for only a sentence four remand, not a sentence six remand." Id. (citations omitted); see also Couch v. Astrue, 267 Fed. App'x 853, 857-58 (11th Cir. 2008) (finding that district court did not err in refusing to remand under sentence six because the evidence was not new evidence that the Commissioner failed to incorporate into the record). In sum, where a claimant properly presents new evidence for consideration by the AC and the AC denies the request for review after considering the new evidence submitted, the "substantial evidence" standard required by sentence four applies, and the Court must determine whether the new evidence demonstrates that the denial of benefits is erroneous because the decision is no longer supported by substantial evidence.

Here, the Court notes that the AC received the new records, and found that the new records did not provide a basis for changing the ALJ's opinion. R. 2. Thus, contrary to Plaintiff's assertion that the AC was required to provide an explicit and adequate reason for "ignoring" the opinion and was required to apply the six-factor analysis concerning treating source opinions, the question becomes not whether the AC disregarded the new evidence, but whether in light of the new evidence, the Commissioner's decision is supported by substantial evidence.

The AC "must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Ingram, 496 F.3d at 1261. Although Dr. D'Souza's records are new, they do not render the ALJ's decision contrary to the weight of the evidence.

In concluding that Plaintiff could perform light, simple, but not detailed, work-related

9

tasks, the ALJ relying on medical records and opinions acknowledged that Plaintiff has back and hip pain, but that her hip x-rays showed only mild osteoarthritis. Furthermore, the record provided that there was no etiology for Plaintiff's musculoskeletal complaints. R. 17, 155-64. The ALJ also relied on Plaintiff's statements concerning her continued performance of her activities of daily living.

On the other hand, although Dr. D'Souza opined that Plaintiff had "severe back pain" and a very limited ability to perform physical activities, he did not provide any medical records that support his conclusions that Plaintiff was disabled. R. 276-80. The record reflects that Dr. D'Souza treated Plaintiff on five occasions between March 22, 2007 and September 20, 2007. R. 241 - 44. On March, 22, 2007, Dr. D'Souza diagnosed Plaintiff with lumbar spondylopathy. R. 244. At that visit, Plaintiff was prescribed Ibuprofen, Flexeril, a back brace, and was given a Depomedrol injection in her hip. R. 244. On May 17, 2007, Plaintiff complained of pain in her shoulder, and noted she was losing weight without trying. R. 243. Plaintiff was given an injection of Depomedrol in her right shoulder, and Dr. D'Souza, concerning Plaintiff's weight-loss, had her thyroid checked. R. 243. On June 21, 2007, Plaintiff reported pain in her back. R. 242. However, she noted that she had been pain free for approximately one month – since her injection – but that on June 20, 2007, her pain returned. R. 242. At that visit, Plaintiff was prescribed an x-ray for her spine and was informed that her weight-loss was related to irregularities in her thyroid. R. 242. On July 19, 2007, Plaintiff complained of stomach pain and feeling depressed, but did not complain of back pain. R. 241. Finally, on September 20, 2007, Plaintiff complained of a gynecological issue. R. 241.

Here, Dr. D'Souza's physical capacities evaluation is not supported by any medical records, and his own evaluations of Plaintiff simply do not support the severe limitations he reports in the physical capacities evaluation. As noted above, the medical records at best indicate Plaintiff had only mild osteoarthritis in her hip, and there was no etiology for Plaintiff's musculoskeletal complaints. Further undermining Dr. D'Souza's report, is that Plaintiff herself testified at the hearing that she could sit for four hours and stand for four hours (R. 300), but Dr. D'Souza reported that she could only stand for 30 minutes and sit for one hour (R. 273). Finally, Dr. D'Souza's "physical capacities evaluation" contains inconsistencies, a point not lost on the Commissioner. Comm'r Br. p. 19. Indeed, Dr. D'Souza, opined that although Plaintiff could stand for no more than 30 minutes per day and could sit for no more than one hour per day, she had no need to rest, recline, or lie down during the day. (R. 276-77). In light of the above, the Court finds that although Dr. D'Souza's records are new, they do not render the ALJ's decision contrary to the weight of the evidence.[4]

### B. Evidence Does Not Show Satisfaction of the 12.05(C) Listing.

Plaintiff next maintains that the ALJ's determination at step three of the sequential evaluation process is inconsistent with the record evidence. Simply stated, Plaintiff contends that she meets the 12.05(C) Listing. The Commissioner, on the other hand, contends that

---

[4]Plaintiff argues that the AC had a duty to recontact Dr. D'Souza pursuant to 20 CFR § § 416.912(e)(1), 416.912(e)(1) (2009). That regulation provides that when evidence is inadequate to assess a claimants disability, the ALJ is required to recontact a treating source. As stated above, the Court finds that the ALJ's opinion is based on substantial evidence in the record. Thus, where, as here, the record contains sufficient evidence to render a decision, there is no duty to recontact a treating source, and Plaintiff's argument fails.

11

substantial evidence in the record proves otherwise. The Court notes from the outset that Plaintiff bears the burden of showing that her condition meets or equals the Listing. Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 CFR § 416.920(d).

### 1. IQ Scores Alone Not Conclusive.

Relevant to Plaintiff's case is the 12.05(C) Listing. It provides: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 CFR Pt. 404, Subpt. P, App. 1, 12.05(C). Thus, a claimant satisfies Listing 12.05(C) when she "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."

Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[5] The Eleventh Circuit, however, has recognized "that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting that while a claimant's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of mental retardation); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) (noting that IQ "test results must be examined to assure consistency with daily activities and behavior").

Here, the ALJ's decision acknowledged that Plaintiff's medical records show that she has a history of polysubstance dependence, attending substance abuse treatment "numerous times," and had a history of psychotic disorder with global assessment of functioning ("GAF") of 60 and in the 50's when in compliance with medications. R. 14, 151-54, 188-215. The ALJ also referenced the intellectual assessment performed by consulting psychologist Dr. Marvin Long. R. 14. Dr. Long stated that during the assessment, Plaintiff was encouraged and reinforced to do her best; he noted that for the most part, he got adequate cooperation. R. 14, 273. The ALJ acknowledged that Dr. Long determined that Plaintiff

---

[5]Although the 12.05(C) Listing is generally characterized as having a two-prongs, an IQ prong and an additional impairment prong, it actually encompasses three prongs inasmuch as the Listing defines mental retardation as "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C) (emphasis added); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (noting three-part criteria for obtaining benefits under Listing 12.05(C)).

scored in the mental deficient- mild range on the Wechsler Scale with a verbal score of 70, a performance score of 64 which generated a full scale score of 65. R. 14, 273. Dr. Long also noted that Plaintiff's subsets ranged from the deficient to the low average level. (Id.). Notably, Plaintiff did exhibit higher level capability in select areas, such as primarily social judgment, applied street knowledge, reading, writing, and spelling. (Id.).

However, as noted above, the presumption of mental retardation from low IQ scores can be rebutted with evidence of daily activities that are inconsistent with such a diagnosis, particularly when, as in this case, there is not conclusive evidence that Plaintiff has ever been diagnosed with mental retardation, let alone that such diagnosis manifested before age 22, as is required by the applicable Listing.[6] See Hodges, 276 F.3d at 1269 (recognizing requirement of Listing 12.05(C) for manifestation of mental retardation before age 22 and allowing that Commissioner may use evidence of activities of daily life to rebut presumption of mental impairment). Thus, the Court turns its attention to whether Plaintiff's daily activities are inconsistent with the low IQ scores.

The ALJ found that Plaintiff's mild mental deficiency does not meet or equal Listing 12.05 for the following reasons: (1) Plaintiff's social judgment, applied street knowledge, reading, writing, and spelling are all low average; (2) Dr. Long's finding that she gave adequate cooperation only "for the most part" – i.e., not consistently; and (3) Plaintiff lacks full credibility. R. 15. Indeed, the ALJ noted that, in her activities of daily living, Plaintiff has no restriction. R. 15. In social functioning, Plaintiff has moderate difficulties. R. 15.

---

[6]It should be noted that Plaintiff had worked as a Certified Nurse Assistant in a nursing home in 1989 and 1993. R. 81, 155, 287, 294. However, she chose to leave the job to care for her children. (Id.).

14

With regard to concentration, persistence or pace, the Plaintiff has mild difficulties. R. 15. Furthermore, as for episodes of decompensation, Plaintiff has experienced no such episodes. R. 15. Thus, the Court concludes that in light of the other evidence of record, including Plaintiff's daily activities, the ALJ properly determined that Plaintiff's IQ scores do not provide sufficient evidence to satisfy Listing 12.05(C) and thus she failed to meet the first prong of Listing 12.05(C).

### 2. Severity of Any Additional Impairments Moot.

Plaintiff also argues that she satisfies the additional impairment prong of Listing 12.05(C) because the ALJ found that she had several "severe" non-IQ impairments, and she had an additional and significant impairment for purposes of 12.05(c). Pl.'s Br. p. 22. Moreover, Plaintiff maintains that although one of the ALJ's reasons for finding Plaintiff did not meet 12.05(C) was that she lacked credibility, credibility has nothing to do with listing 12.05(C). Pl.'s Br. p. 23. Therefore, Plaintiff contends that the ALJ erred by failing to conclude that the "additional medical impairment" prong of Listing 12.05(C) was satisfied. However, in light of Plaintiff's failure to show that she satisfies the requirements of Listing 12.05(C) concerning her intellectual functioning, her arguments concerning the severity of her other physical impairments and the ALJ's determination of her credibility are moot.[7]

In sum, the ALJ's finding at step three of the sequential evaluation process that Plaintiff did not meet all of the necessary requirements of Listing 12.05(C) is supported by substantial evidence.

---

[7]As noted above, to show that his impairment meets a Listing, Plaintiff needs to meet <u>all</u> of the specified criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. <u>Sullivan</u>, 493 U.S. at 530.

15

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 29th day of April, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE