ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT

2010 AUG 24 AM 10: 15

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| MARCHELLE D. BOUYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-028 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

After a careful, *de novo* review of the file, the Court concurs with the Magistrate Judge's Report and Recommendation, to which untimely objections have been filed.[1] The Magistrate Judge recommend affirming the Commissioner's final decision denying Plaintiff's application for Supplemental Security Income. Plaintiff sought remand of the Commissioner's final decision. More specifically, Plaintiff argued that the Appeals Council ("AC") improperly reviewed and did not adequately explain its reasons for rejecting the newly prepared "physical capacities evaluation" by Dr. S.C. D'Souza.[2] Additionally,

---

[1]Although the Court will address the objections, the Magistrate Judge's Order directing service of the Report and Recommendation directed the parties that the objections to the Report and Recommendation were due not later than May 17, 2010. (Doc. no. 17.) Plaintiff filed her objections to the Report and Recommendation on May 18, 2010. (Doc. no. 18.) The Commissioner filed a response to Plaintiff's objections. (Doc. no. 19.)

[2]After the Administrative Law Judge ("ALJ") issued his decision in January 2008, Dr. D'Souza, who had treated Plaintiff on five occasions between March 22, 2007 and

Plaintiff argued that the ALJ erred in finding that Plaintiff did not meet Listing 12.05(C) . (See generally Pl.'s Br., doc. no. 14.) Although Plaintiff raises numerous objections to the Report and Recommendation, only a select few merit further comment. None of the objections provide any reason to disturb the Magistrate Judge's recommendation.

First, Plaintiff objects to the Magistrate Judge's conclusion that the AC properly addressed Dr. D'Souza's evaluation, and that the evaluation did not render the ALJ's opinion contrary to the weight of the evidence. (Doc. no. 18.) In her objections Plaintiff re-urges her argument that the AC improperly addressed the new evidence from Dr. D'Souza because it merely provided that it "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Id. at 2.) Plaintiff believes that the AC was required to articulate a meaningful rationale explaining its evaluation for rejecting D'Souza's evaluation. (Id. at 2-4.) Notably, however, as she did in her initial briefing, Plaintiff continues to fail to distinguish between the requirements of the fact-finding ALJ as opposed to those of the reviewing AC.

The Report and Recommendation specifically addressed this issue and explained:

[W]here a claimant properly presents new evidence for consideration by the AC and the AC denies the request for review after considering the new evidence submitted, the "substantial evidence" standard required by sentence four applies, and the Court must determine whether the new evidence demonstrates that the denial of benefits is erroneous because the decision is no longer supported by substantial evidence.

(Doc. no. 16, p. 9.) Here, the AC considered the new evidence but determined that it did not

---

September 20, 2007, prepared a "physical capacities evaluation" (hereinafter "Dr. D'Souza's evaluation" or "new evaluation") in April 2008 that was then submitted by Plaintiff to the AC.

2

provide a basis for overturning the ALJ's decision. See Barclay v. Commissioner of Soc. Sec. Admin., 274 F. App'x 738, 743 (11th Cir. 2008) (finding AC did not err after considering the new evidence but decided not to review the plaintiff's case because the new evidence did not provide a basis for changing the ALJ's decision). More importantly, the Eleventh Circuit noted, "When a claimant submits new evidence to the AC, a reviewing court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. Id. Here, the AC considered, the entire record, including Dr. D'Souza's evaluation and in determined that this new evidence did not provide a basis for changing the ALJ's decision.

Next, Plaintiff takes issue with the Magistrate Judge's analysis of the new evidence. More specifically, Plaintiff argues that the Court should not consider the analysis provided by the Magistrate Judge because under SEC v. Cherney Corp., 332 U.S. 194, 196 (1947), the Court should limit its analysis to the reasons set forth by the AC itself.[3] (Doc. no. 18, p.

---

[3] To the extent Plaintiff takes issue with the Magistrate Judges analysis of the "important evidence," the record does not support Plaintiff's assertion. The Court will, however, briefly address Plaintiff's argument that the Magistrate Judge improperly asserted that "there was no etiology for Plaintiff's musculoskeletal complaints." (Doc. no. 18.)

Plaintiff argues that the Magistrate Judge's determination that there was no etiology for Plaintiff's musculoskeletal complaints is incorrect because the record reflects x-rays and other medical tests that revealed Plaintiff has spine problems and osteoarthritis. (Id.) More importantly according to Plaintiff, Dr. D'Souza characterized "these findings as 'severe untreated lumbar spondylopathy.'" (Id.) First, the Magistrate Judge did not overlook important evidence, let alone make a medical determination. Indeed, the Report and Recommendation cites to the very medical records Plaintiff claims were overlooked. (Doc. no. 16, pp. 5-7, 9-11.) Second, it should be noted that Vasudev Kulkarni, M.D., opined there was no etiology for Plaintiff's musculoskeletal complaints. R. 17, 155-64. Next, the Report and Recommendation provides that the ALJ relied on this opinion (among other things) in his determination that Plaintiff's complaints about the intensity, persistence and limiting effects of her symptoms were not entirely credible. Furthermore, the Report and Recommendation does note that the medical records and opinions indicate that Plaintiff has

3

5.) Chenery addresses a ruling that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Id. at 196. Notably, Plaintiff did not cite to, nor did the Commissioner or the Court find, any case within the Eleventh Circuit that applied Chenery to a social security disability case. Moreover, in Ingram, the Eleventh Circuit explained, "The Appeals Council must consider new, material, and chronologically relevant evidence <u>and must review the case *if* 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'</u>" Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1266-67 (11th Cir. 2007) (emphasis added). Indeed, in Ingram, the matter was remanded to the district court for the district court to determine whether the AC correctly decided that, even with the new evidence, the ALJ's opinion was not contrary to the record. Id. As noted by the Magistrate Judge, the AC received the new records, and found that the new records did not provide a basis for changing the ALJ's opinion. (Doc. no. 16, p. 9.) Therefore, the Magistrate Judge properly evaluated the entire record before the Court and determined that the ALJ's opinion was supported by substantial evidence.

---

back and hip pain. (Doc. no. 16, pp. 6, 9.)
       On a final note, Plaintiff argued that Dr. D'Souza characterized "these findings as 'severe untreated lumbar spondylopathy.'" (Doc. no. 18, p. 7.) The Court presumes that by "these findings" Plaintiff is referring to the clinical records dated August 8, 2006, that provide that Plaintiff had "mild osteoarthritic changes in both hips, very minimal retrolishesis of L5 on S1." (Id. (citing R. 267).) The Court must "presume" this because Dr. D'Souza's evaluation is not (as addressed in the Report and Recommendation) supported by any medical records, nor does it refer to any medical records. Here, Plaintiff is attempting to suggest that the ALJ's opinion is not supported by the evidence of record by relying on an evaluation that is not even supported by the author's own medical records.

4

The Court turns next to Plaintiff's objection that the Magistrate Judge erroneously concluded that the ALJ's decision that Plaintiff did not meet Listing 12.05(C) was supported by the record. (Doc. no. 18, pp. 7-11.) Notably, the Magistrate Judge found that ALJ's decision acknowledged that Dr. Long determined that Plaintiff scored in the mental deficient-mild range on the Wechsler Scale with a verbal score of 70, a performance score of 64 which generated a full scale score of 65. (Doc. no. 16, pp. 13-14.) However, the ALJ also noted that Plaintiff did exhibit higher level capability in select areas, such as primarily social judgment, applied street knowledge, reading, writing, and spelling. (Id.)

As explained by the Magistrate Judge, the presumption of mental retardation from low IQ scores can be rebutted with evidence of daily activities that are inconsistent with such a diagnosis. (Id. at 14.) The Magistrate Judge turned to the ALJ's assessment of Plaintiff's daily activities; the ALJ concluded that the assessment of her daily activities were inconsistent with her low IQ scores. (Id. at 14-15.)

> Indeed, the Magistrate Judge explained:
>
> The ALJ found that Plaintiff's mild mental deficiency does not meet or equal Listing 12.05 for the following reasons: (1) Plaintiff's social judgment, applied street knowledge, reading, writing, and spelling are all low average; (2) Dr. Long's finding that she gave adequate cooperation only "for the most part" – i.e., not consistently; and (3) Plaintiff lacks full credibility. R. 15. Indeed, the ALJ noted that, in her activities of daily living, Plaintiff has no restriction. R. 15. In social functioning, Plaintiff has moderate difficulties. R. 15. With regard to concentration, persistence or pace, the Plaintiff has mild difficulties. R. 15. Furthermore, as for episodes of decompensation, Plaintiff has experienced no such episodes. R. 15.

(Id.) Thus, the statement that there is not conclusive evidence that Plaintiff has ever been diagnosed with mental retardation is immaterial. Indeed, the Magistrate Judge noted that

5

even with the presumption of mental retardation from low IQ scores, in light of the other evidence of record, including Plaintiff's daily activities, the ALJ properly determined that Plaintiff's IQ scores do not provide sufficient evidence to satisfy Listing 12.05(C). Thus she failed to meet the first prong of Listing 12.05(C). (Id.) Therefore, the ALJ properly determined that even though Plaintiff had the low IQ score, her daily activities were inconsistent with such a diagnosis.

Similarly, Plaintiff's reliance on the DSM-IV-TR[4] misses the mark. Plaintiff satisfies Listing 12.05(C) when she "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Plaintiff asserts that the DSM-IV-TR recognizes 11 areas of adaptive functioning, and that under the DSM-IV-TR analysis she need not have deficits in every area, two areas suffice. (Doc. no. 18, p. 10.) Plaintiff maintains that she has the requisite deficits in two areas and thus should be diagnosed with mental retardation under the DSM-IV-TR.[5] (Id.)

---

[4]Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, 4th Ed. Text Revison 2000).

[5]Plaintiff represents that the ALJ found Plaintiff had "moderate" deficits in social functioning and mild deficits in concentration, persistence, and pace and that this was sufficient to satisfy the adaptive deficits requirement of 12.05(C) because "Social/interpersonal skills is an area of adaptive functioning recognized in the DSM-IV-TR. Plaintiff further claims that the ALJ had "significant adaptive deficits in the area of 'work' — she is limited to 'simple, but not detailed' tasks, can only accept 'non-threatening' supervision, and sometimes has 'difficulty adapting to workplace changes.'" (Doc. no. 18, p. 11.)

Notably, however, Listing 12.05(C) defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." Battle v. Astrue, 243 F. App'x 514, 520 (11th Cir. 2007) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05). Furthermore, as noted by the ALJ, Plaintiff had to exhibit at least two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation. The ALJ determined that Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. R. 15. Therefore, for purposes of determining whether Plaintiff met listing 12.05(C), the ALJ properly found that she did not.[6]

Plaintiff's objections are without merit and are **OVERRULED**. Accordingly, the Report and Recommendation of the Magistrate Judge is **ADOPTED** as the opinion of the Court. Therefore, the Commissioner's final decision is **AFFIRMED**, this civil action is **CLOSED**, and a final judgment shall be **ENTERED** in favor of the Commissioner.

SO ORDERED this 24th day of August, 2010, at Augusta, Georgia.

UNITED STATES DISTRICT JUDGE

---

[6] Notably, Plaintiff does not argue that she had any "marked" restrictions. To the extent she claims that she had "significant" adaptive deficits in the area of work, the record simply does not substantiate this characterization.

7